IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICKY R. STEWART,

        Plaintiff,

v.                                                  Civil Action No. 2:04CV37

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

**MEMORANDUM, OPINION and REPORT AND RECOMMENDATION THAT CLAIMANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED, THAT COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT BE GRANTED, AND THAT CLAIMANT'S MOTION FOR HEARING BE DENIED.**

## I. Introduction

A.    Background

     Plaintiff, Ricky R. Stewart, (Claimant), filed his Complaint on May 18, 2004 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1] Commissioner filed her Answer on September 7, 2004.[2] Claimant filed his Motion for Summary Judgment and Brief in Support Thereof on November 8, 2004.[3] On November 8, 2004 Claimant filed a Motion for Hearing.[4] Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on November 8, 2004.[5] Commissioner filed

---

[1] Docket No. 1.

[2] Docket No. 6.

[3] Docket No. 8.

[4] Docket No. 9.

[5] Docket Nos 10 and 11.

her Reply to Plaintiff's Motion for Summary Judgment on November 24, 2004.[6]

B.  The Pleadings

   1.  Claimant's Motion for Summary Judgment and Brief in Support Thereof .[7]

   2.  Claimant's Motion for Hearing.[8]

   3.  Commissioner's Motion for Summary Judgment and Brief in Support Thereof.[9]

   4.  Commissioner's Reply to Plaintiff's Motion for Summary Judgment.[10]

C.  Recommendation

   1.  I recommend that, Claimant's Motion for Summary Judgment be DENIED, Commissioner's Motion for Summary Judgment be GRANTED based on the following reasons: the ALJ properly analyzed Claimant's hand limitations and mental limitations including his I.Q.  Also, I recommend that Claimant's Motion for Hearing be denied because the issues were sufficiently discussed in the submitted briefs and a hearing was not necessary to resolve the issues.

## II.  Facts

A.  Procedural History

On July 1, 2002 Claimant filed for Disability Insurance Benefits (DIB) and Social Security Income (SSI) payments alleging disability since February 23, 2000.  The application was denied

---

[6] Docket No. 13.

[7] Docket No. 8.

[8] Docket No. 9.

[9] Docket Nos 10 and 11.

[10] Docket No. 13.

initially and on reconsideration. A hearing was held on September 29, 2003 before an ALJ. The ALJ's decision dated January 29, 2004 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on April 16, 2004. This action was filed and proceeded as set forth above.

B.  Personal History

Claimant was 44 years old on the date of the September 29, 2003 hearing before the ALJ. Claimant has the equivalent of a high school education and past relevant work experience as a laborer and a cook.

C.  Medical History

The following medical history is relevant to the time period during which the ALJ concluded that Claimant was not under a disability February 23, 2000 - January 29, 2004:

**Dr. Annette Warrenfeltz, Tr. 92**
- Unable to use left hand and arm to do productive work - considered to be total loss of use of left arm.

**Physical Residual Functional Capacity Assessment, 11/13/00, Tr. 112-119**
- Primary diagnosis trauma to radial nerve left arm.

Exertional Limitations: Occasionally 20 lbs., frequently 10, lbs., stand and walk 6 of 8 hours, sit 6 of 8 hours, limited push and pull left arm.

| | |
|---|---|
| POSTURAL LIMITATIONS: | All frequently. |
| MANIPULATIVE LIMITATIONS: | Limited handling and fingering. |
| VISUAL LIMITATIONS: | None established. |
| COMMUNICATIVE LIMITATIONS: | None established. |
| ENVIRONMENTAL LIMITATIONS: | Avoid concentrated exposure to hazards. |

**Mohammad Shapiei, M.D., 2/11/99, Tr. 127**
- Left radial nerve injury below elbow as the result of job related accident.

**1/4/94, Tr. 130**
- Post traumatic cervical paraspinal muscle strain. Possible cervical radiculopathy.

**Psychiatric Review Technique, 5/23/01, Tr. 131**
- No medically determinable impairment.

**Carlos S. Santiago, III, M.D., 8/26/02, Tr. 158-160**
•        Chronic pain, ulnar nerve neuropathy, lateral, epicon [illegible], post-traumatic.

**Kip Beard, M.D., 10/7/02, Tr. 167-168**
•        Left arm injury with chronic pain, etiology unclear.
•        Chronic neck pain.
•        A chronic cervical strain probably superimposed upon degenerative disc and joint disease.
•        Chronic low back pain probably superimposed upon some degenerative disc and joint disease.

**Tracy L. Conser - Shepherd, M.S.  10/16/02, Tr. 169-177**
I.Q.            verbal 89              performance 86              full scale 87
AXIS I:        (296.54) Bipolar I disorder, most recent episode, depressed, severe with psychotic features, mood congruent (provisional rule out schizoaffective disorder).
               (309.81) Posttraumatic stress disorder, chronic.
               (304.30) Cannabis dependence, full, sustained remission.
AXIS II:       (301.9) Personality disorder not otherwise specified (antisocial and borderline traits).
AXIS III:      Ulcer, radial nerve damage, deteriorated disc in back with back pain and neck pain, difficulty moving, and weight loss (self-report and some medical records).

**Psychiatric Review Technique, Tr. 179-192**
•        Impairment not severe.
•        Bipolar disorder, post-traumatic stress disorder, chronic personality disorder, NOS (borderline and [illegible].
•        "B" Criteria, mild restrictions on daily living, difficulties in social functioning and difficulties in maintaining concentration.  No episodes of decompensation.
•        Evidence does not establish presence of "C" Criteria.

**Physical Residual Functional Capacity Assessment, 10/28/02, Tr. 193-200**
PRIMARY DIAGNOSIS:  Left radial nerve damage.
Exertional Limitations: Occasionally 20 lbs., frequently 10 lbs., stand and walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS: All occasionally.
VISUAL LIMITATIONS:     None established.
COMMUNICATIVE LIMITATIONS:  None established.
Environmental Limitations: Unlimited, except avoid concentrated exposure to extreme cold and hazards.

**Psychiatric Review Technique        2/21/03, Tr. 222-235**
•        Impairments not severe.
•        Bipolar Syndrome, PTSD, PD, NOS.

4

- "B" Criteria, no restrictions on daily living of difficulties maintaining concentration.
- Mild difficulties in social functioning, no episodes of decompensation.
- Evidence does not establish presence of "C" criteria.

**Physical Residual Functional Capacity Assessment     2/27/03, Tr. 237-224**
PRIMARY DIAGNOSIS:     Left radial nerve damage.
EXERTIONAL Limitations: Occasionally 20 lbs., frequently 10 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL Limitations:     All occasionally.
VISUAL Limitations:     None established.
COMMUNICATIVE Limitations: None established.
Environmental Limitations: Avoid concentrated exposure to extreme cold and hazards.

**William C. Snuberger, M.A., 3/19/02, Tr. 250**
AXIS I:     301.13 Cyclothymic Disorder, R/O Dysthymic Disorder, R/O Bipolar II Disorder, V62.89 Phase of Life Problem
AXIS II:     799.9 Diagnosis on Axis II deferred R/O Antisocial Personality Disorder
AXIS III:     Chronic pain/weakness in left arm (by report)
AXIS IV:     Psychosocial Stressors: Chronic pain; financial stress; inadequate coping skills
AXIS V:     GAF (Current): 50

**Mohammad Shapiei, M.D., 2/6/03, Tr. 253**
- S/P Traumatic Cervical Paraspinal Muscle Strain.
- S/P Left Radial Nerve Palsy.
- S/P Chronic Pain Syndrome.

**Potomac Valley Hospital, X-Ray, 3/22/03, Tr. 258**
- Normal right ankle, normal right foot.

**Lilly I. Kao, M.D., 4/8/03, Tr. 265-275**
AXIS I:     Bipolar Disorder, Not Otherwise Specified.
AXIS II:     Personality Disorder, Not Otherwise Specified.
AXIS III:     As above.
AXIS IV:     Moderate.
AXIS V:     Current GAF: 55

**Medical Assessment of Ability to Do Work Related Activity (Physical)**
**Mohammad Shapiei, M.D., 9/22/03, Tr. 289-291**
- Lift 10 lbs. occasionally and frequently; standing and walking not affected by impairment; sitting not affected by impairment.

Postural Limitations: Never climb, balance, crouch or crawl. Occasionally stoop and kneel.
PHYSICAL FUNCTIONS:     Limited reaching, handling, feeling, pushing, pulling.
ENVIRONMENTAL LIMITATIONS: Limited heights, machinery, vibrations.

D.   Testimonial Evidence

### 1. Claimant

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 329-31, 336-37, 339-40):

Q   Do you have any problems remembering things?

A   Yes, sir, sometimes I do.

Q   Do you have trouble remembering things that just recently happened to you, or things that happened some time ago?

A   Yes, sometimes I do.

Q   Well which, which is it?

A   Well I have problems remembering things that happened a long time ago.

Q   But not things that recently happened to you?

A   Well sometimes, it just depends.

Q   Are you getting any treatment for that problem?

A   No, sir.

Q   Are you getting individual therapy, in other words you're the only person that the therapist is treating at that one time?

A   Yes.

Q   How often are you seeing a therapist?

A   Usually once a month.

\*          \*          \*

Q   What kind of symptoms do you have?

A       Depression.

Q       What makes you depressed?

A       Not being able to work, not being able to use my hands as much as I would. Not being able to interact with the children. Not being able to do a lot of the things I use to do before. It's very, very aggravating for me. I'm, I'm really use to doing a lot of work. I've always worked most of my life. I've always did some kind of job. And it's just depressing for me that I can't do those things no more.

                *              *              *

Q       Okay. Now you talked to the judge about sleep problems, do you have trouble getting to sleep or staying to sleep?

A       I have problems getting to sleep and staying asleep.

Q       What is it that keeps you from getting to sleep?

A       Pain in my arm. Pains in - - down my - - both my legs. (INAUDIBLE).

Q       I assume pain in your arm is the worse pain?

A       Yeah.

Q       What does that feel like?

A       I just feels like somebody takes and lays my arm down constantly with a 25-pound sledge hammer.

                *              *              *

Q       Okay. Is the pain constant or does it come and go?

A       It's constant.

Q       What sort of things or activities make that pain worse?

A       Generally just moving my arm. Any, any, anytime I have to move my arm or lift any kind of weight, or it just, it just - - I don't it does something to the nerve in there. The doctor said it did something to the radial nerve damage or something, that it just aggravates it.

Q       Now do you have - - what do you do to alleviate that pain?

A       There ain't much I can do.

Q       Okay.

A       I mean I take some many pain pills, and then I'm not allowed to take any more pain pills, so I've just got to try to deal with it.

*       *       *

Q       Tell me what your neck pain feels like?

A       Well it just radiating pain, it's up and down both my shoulder blades.

Q       And what sort of things make your neck pain worse?

A       How I turn my head too far to the left or too far to the right, or tilt it back too far.

Q       Do you have trouble sleeping because of your neck?

A       Yes. That's one of the reasons why they put me on the Elavil, because I was having trouble either with my arm or my back or my neck, it was always something that was causing me to lose sleep.

Q       Do you have any trouble getting your neck in a comfortable position to get to sleep?

A       Yeah. I've even tried the therapeutic pillows and stuff and try to align my spine up, but they don't help.

### 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr. 341-43):

Q      I want you to consider the following hypothetical question. I want you to assume that there is a person who has the ability to lift no more than 10 pounds frequently, no more than 10 pounds on occasion. So a maximum weight of 10 pounds. A person who also has limited push/pull capability involving the nondominant upper extremity. If these were the exertional limitations, in your opinion, could such a person perform sedentary?

A      Yes, sir.

Q      Would it be a full range?

A      Pretty close.

Q      I want you to consider nonexertional limitations, consider a person who's age ranges from 40 to 43, a person with a high school equivalency education, a person with the claimant's training and work experience, and a person with exertional impairments which would permit essentially a full range of sedentary, unskilled work. But assume also that there are the following nonexertional impairments and limitations. All postural activities could be performed no more than occasionally. This would include climbing, balancing, bending or stooping, kneeling, crouching or squatting, as well as crawling. There would also be limitations involving use of the hands and arms on the nondominant side. This would involve reaching, handling, and fingering. Those activities could be performed no more than occasionally. Also such a person would have to avoid concentrated exposure to hazards, such as moving machinery, or unprotected heights, as well as exposure to cold temperatures, and finally - - well also such a person would not be able to do any work which would be precluded by someone who had a

felony conviction. And finally such a person would have moderate limitation as a result of both pain, as well as emotional factors. And I define moderate for the record as meaning as to an individual activity, that activity is limited, but not precluded. And the ability to maintain attention and concentration for extended periods, to interact appropriately with the general public, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and finally to respond appropriately to changes in the work setting. If these were the limitations and we then consider unskilled jobs, there are 200 recognized under the regulations, in your opinion, what percentage of those 200 jobs could a person with those limitations perform?

    A    Probably about 70%.

    Q    Could you give me two examples of jobs that could be performed by someone with those limitations, and tell me how many of them are available both nationally, as well as in the Cumberland area?

    A    At the sedentary, unskilled level, we have taper of circuit boards, there are over 30,000 nationally, 300 locally. We have final assembler, which is for eye glasses. There are over 46,000 nationally, over 350 locally.

    Q    I want you to consider a separate hypothetical question. Consider the same age, education, work experience, and I hand you Exhibit 27F, and ask you if those were the limitations expressed in that report, could - - is there any work that such a person could perform?

    A    I think based on this hypothetical here, the job I identified would be available.

    Q    Let me ask you to consider only the claimant's testimony as presented today. If I were to give that testimony full credibility, assume also that it's supported by substantial medical

evidence, under those assumptions alone, in your opinion, is there any work that he could perform at this time?

    A    No, sir, there would be no work.  He testified that 3 to 4 days a week he sleeps between 2 and 3 hours a day, and that would result in a loss of productivity greater than the acceptable standards.

    E.    <u>Lifestyle Evidence</u>

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records.  The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

- Able to stand for one hour.  (Tr. 321).
- Able to sit for twenty minutes.  (Tr. 321).
- Able to walk fifty yards.  (Tr. 321).
- Able to lift between five and twenty-five pounds.  (Tr. 322).
- Had a marijuana problem.  (Tr. 325).
- Was incarcerated for eighteen months for drugs.  (Tr. 325-26).
- Washes dishes, goes grocery shopping, vacuums, and sweeps.  (Tr. 328)
- Watches five hours of television a day.  (Tr. 328).
- Visits his mother.  (Tr. 331).
- Repairs his car.  (Tr. 331).
- Enjoys listening to music.  (Tr. 335).

**II.  The Motions for Summary Judgment**

A. Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the ALJ failed to address what level of hand usage he believed Claimant to be capable of. Also, Claimant asserts that the mental limitations provided to the Vocational Expert (VE) were unfounded. Lastly, Claimants asserts that the ALJ erred by failing to discuss the weight accorded conflicting reports of Claimant's I.Q.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the ALJ limited Claimant to no more than occasional use of his hand and arm as supported by the record. Also, Commissioner asserts that the objective medical evidence supports the mental limitations provided to the VE. Lastly, Commissioner maintains that the ALJ properly considered Claimant's I.Q.

B. The Standards.

1. Summary Judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

2. <u>Judicial Review</u>. Only a final determination of the Commissioner may receive judicial review. <u>See</u> 42 U.S.C. §405(g), (h); <u>Adams v. Heckler</u>, 799 F.2d 131,133 (4th Cir. 1986).

3. <u>Social Security - Medically Determinable Impairment - Burden</u>. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460 (1983).

4. <u>Social Security - Medically Determinable Impairment</u>. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); <u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5. <u>Disability Prior to Expiration of Insured Status- Burden</u>. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. <u>Highland v. Apfel</u>, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); <u>Stephens v. Shalala</u>, 46 F.3d 37, 39 (8th Cir.1995)).

6. <u>Social Security - Standard of Review</u>. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

7. <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his rationale in crediting certain evidence in conducting the "substantial evidence inquiry." <u>Milburn</u>

Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8. Social Security - Substantial Evidence - Defined. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9. Social Security - Sequential Analysis. To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

C. Discussion

### 1. Claimant's Hand Limitation

Claimant asserts that the ALJ failed to address what level of hand usage he believed Claimant to be capable of. Commissioner counters that the ALJ limited Claimant to no more than occasional use of his hand and arm as supported by the record. (Tr. 19).

Claimant maintains that the VE indicated that if Claimant had no ability to use his left hand

the hypothetical jobs could not be performed. However, Claimant does not provide any evidence to support that Claimant had no ability to use his left hand. The VE testified that a Claimant with limitations involving the hands and arms on the dominant side where reaching, handling, and fingering could be performed no more then occasionally, jobs exist in the national economy. (Tr. 342). The ALJ clearly stated in his opinion that Claimant "has limited use of the non-dominant (left) upper extremity in pushing/pulling, reaching, handling, and fingering . . ." (Tr. 19). The ALJ properly addressed the level of hand usage of which Claimant is capable.

## 2. Mental Limitations in Hypothetical Questions

Claimant asserts that the mental limitations provided to the VE were unfounded. Commissioners counters that the objective medical evidence supports the mental limitations provided to the VE.

The ALJ concluded that Claimant "has moderate limitations, due to pain and mental problems, in the ability to maintain attention/concentration for extended periods of time, keep up pace, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting . . ." (Tr. 19). The objective medical evidence supports that, at most, Claimant has moderate limitations as a result of his bipolar and post traumatic stress disorder. Drs. Cosner-Shepherd and Trainor found concentration within normal limits, mild to moderate deficiency in persistent, pace within normal limits, immediate memory within normal limits, and moderate deficiency in recent memory. (Tr. 169-77). Dr. Kuzniar found no medically determinable impairment. (Tr. 131-45). Dr. Capage found no severe impairment. (Tr. 179-92). Dr. Goots found no severe impairment. (Tr. 222-35). Therefore, the objective medical evidence supports the ALJ's conclusion that Claimant has

16

moderate mental limitations.

### 3. Claimant's I.Q.

Claimants asserts that the ALJ erred by failing to discuss the weight accorded conflicting reports of Claimant's I.Q. Commissioner counters that the ALJ properly considered Claimant's mental impairments.

Claimant is correct that the ALJ has to decide what sort of weight to accord conflicting reports. However, the reports of Dr. Snoberger and Drs. Cosner-Shepherd and Trainor are not conflicting. Dr. Snoberger reported that Claimant has a full scale I.Q. of 85. Drs. Cosner-Shepherd and Trainor reported that Claimant has a full scale I.Q. of 87. I.Q. scores of 85 and 87 are not conflicting. The ALJ is not required to discuss every piece of evidence. Green v. Shalala, 51 F.3d 96, 101 (7th Cir. 1995).

Claimant cites Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983) for the proposition that Claimant's I.Q. score as measured by Dr. Snoberger constitutes a severe non-exertional impairment that must be considered in tandem with the rest of Claimant's impairments. Mitchell v. Schweiker involves a claimant with an I.Q. of 58. Mitchell v. Schweiker states that states that "an I.Q. of 59 or less, or an I.Q. of 60 to 69 accompanied by some other 'impairment imposing additional and work-related limitation of function' . . . " Id. at 188. Dr. Snoberger reported Claimant's I.Q. at 85. Based on the foregoing, the ALJ properly analyzed Claimant's mental limitations.

### 4. Motion for Hearing

Claimant filed a Motion for Hearing on November 8, 2004.[11] I recommend that Claimant's Motion for Hearing be denied because the issues were sufficiently discussed in the submitted briefs

---

[11] Docket No. 9.

and a hearing was not necessary to resolve the issues.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED, Commissioner's Motion for Summary Judgment be GRANTED. The ALJ was substantially justified in his decision. The ALJ properly analyzed Claimant's hand limitations, and mental limitations including his I.Q. Also, I recommend that Claimant's Motion for Hearing be denied because the issues were sufficiently discussed in the submitted briefs and a hearing was not necessary to resolve the issues.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: April 28, 2005

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE